UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| JEREMIAH ROSS SMITH, | Case No. 22-cv-07308-PCP |
|---|---|
| Plaintiff, | |
| v. | **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| CITY OF MARINA, et al., | Re: Dkt. Nos. 28, 45 |
| Defendants. | |

This is a civil rights case alleging misconduct by the Marina Police Department and several of its leaders and officers. Plaintiff Jeremiah Smith asserts a series of federal and state claims arising out of incidents that occurred beginning in September 2021. Defendants have moved to dismiss all of Mr. Smith's claims, and Mr. Smith has conceded that some of them are not adequately pleaded against all of the currently asserted defendants. For the reasons set forth below, Mr. Smith's claims are dismissed with leave to amend so that he can both make the corrections he has already conceded are required and attempt to rectify the other shortcomings identified in this order. Mr. Smith's amended complaint is due by February 2, 2024.

**I.  Background**

The following facts alleged by Mr. Smith are accepted as true for purposes of Defendants' Rule 12(b)(6) motion.

Mr. Smith and his family live on a cul-de-sac in Marina, California. They live near Wyatt Youngblood, the son of a Marina Police Department officer. On September 3, 2021, Mr. Smith reported Mr. Youngblood to MPD for sexual assault, lethal threats, and other unspecified crimes against his wife. A few days later, Officer Ryan Rodrigues told Mr. Smith that Mr. Youngblood was dangerous. Detective Michael Ball, Officer Nick Beavers, and others told Mr. Smith that Mr.

1  Youngblood had been charged with several felonies. On September 16, Detective Ball asked Mr.
2  Smith for information for their investigation, and "refused" Mr. Smith's request that he remain
3  anonymous. On the morning of September 22, 2021, Detective Ball, Officer Rodrigues, and others
4  came to Mr. Youngblood's house to ask about the allegations. As Mr. Smith drove by to take his
5  children to school, Mr. Youngblood "screamed profanities, violently gestured at, and threatened"
6  Mr. Smith and his family. Later, after speaking with Mr. Youngblood's father, Detective Ball
7  called Mr. Smith's wife and suggested she get a civil harassment restraining order.

8  Shortly after his wife arrived home that day, several MPD officers arrived at the home and
9  shouted on a bullhorn, "Jeremiah Smith come out with your hands up." The officers had their guns
10 pointed at Mr. Smith's house. The officers, including Officer Rodrigues and Detective Ball,
11 removed Mr. Smith from his home at gunpoint, forced him to the ground, handcuffed him, and
12 arrested him. They screamed at Mr. Smith and his family, interrogated him at gunpoint, and
13 disregarded his request for an attorney. The officers also pointed their guns at Mr. Smith's wife
14 and two-year-old child, searched them, and detained them in a police squad car. Although Mr.
15 Smith acknowledges that the officers had a warrant, he believes the warrant was not proper and
16 lacked specificity, and that the officers did not have probable cause or reasonable suspicion.

17 Mr. Smith had a back injury, which he believes the officers knew or should have known
18 about when they handcuffed him and forced him into a "strained position." After he was detained
19 in the police car, Mr. Smith's blood pressure became "dangerously high" and he was taken to the
20 emergency room.

21 Mr. Smith was then booked into custody for alleged violations of California Penal Code
22 § 417(a)(1) (prohibiting "draw[ing] or exhibit[ing] any deadly weapon whatsoever, other than a
23 firearm") and § 422(a) (prohibiting criminal threats), as well as reckless driving and other
24 allegations. Mr. Smith claims that the officers did not witness the underlying allegations and the
25 facts did not support the charges or warrant. Around September 24, 2021, the deputy D.A.
26 informed Mr. Smith that the charges would not be pursued. Mr. Smith then petitioned for a
27 restraining order against Mr. Youngblood, which was served around September 30, 2021.

28 After his arrest, multiple MPD officers drove by and stopped their police vehicles at the

end of the cul-de-sac where Mr. Smith lived for several weeks, which Mr. Smith believes was intended to intimidate him and retaliate against him for filing a complaint against an MPD officer's family member. Around October 1, 2021, an MPD car was "caught on camera." Several officers photographed Mr. Smith's home, entered its curtilage, and searched the house without a warrant.

At some point following these events, Mr. Smith and his family "were forced to flee" their home "due to the on-going harassment, intimidation, and surveillance," and resided in churches, hotels, and with friends into 2022.

On October 10 and 11, 2021, two of Mr. Smith's friends returned to his house to retrieve some of the family's belongings. Officer Eric Garcia and others detained and questioned the friends inside of the Smith home. The officers did not have a warrant or Mr. Smith's consent to enter the home. The officers also interrogated Mr. Smith's twelve-year-old son, who had accompanied the two friends to the house.

On October 29, 2021, Mr. Smith hired movers to retrieve additional belongings. Someone from the Monterey County Sherriff's Office was present in Mr. Smith's place to observe. MPD squad cars also arrived on Mr. Smith's street.

Mr. Smith alleges that many of the events he recounts were recorded on various MPD officers' body cameras, but that the department has not allowed him to access investigative reports, body camera footage, or other records. He also claims that the City did not properly review or investigate the events surrounding his arrest.

In addition to being forced to flee his home, Mr. Smith says he has lost weight and suffered back and shoulder pain, emotional distress, anxiety, and humiliation as a result of these incidents.

Mr. Smith filed his first complaint in this action in November 2022, which defendants moved to dismiss. Before that motion was heard or resolved, Mr. Smith filed the present amended complaint in May 2023. Defendants now move again to dismiss Mr. Smith's first amended complaint.

## II. Legal Standards

Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief," with allegations that are "simple, concise, and direct." The purpose is twofold. First, a complaint must "plausibly suggest" the plaintiff's entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Second, it must also give "fair notice" and "enable" the defendant "to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A pleading cannot be "so vague or ambiguous" that an opponent "cannot reasonably prepare a response." *See* Fed. R. Civ. P. 12(e).

A complaint that does not state a claim upon which relief can be granted can be dismissed under Rule 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678. Legal conclusions "can provide the framework of a complaint" but must be "supported by factual allegations." *Id.* at 664. The Court must "accept all factual allegations" and "construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

## III. Mr. Smith's Claims Are Dismissed With Leave To Amend.

Defendants move to dismiss each of Mr. Smith's claims under Rule 12(b)(6). In his opposition brief, Mr. Smith concedes that several of the claims are not adequately pleaded and recognizes that dismissal with leave to amend of some of the claims and some of the defendants is appropriate. For the reasons set out in more detail below, the Court dismisses all of the claims set forth in the amended complaint. Mr. Smith may amend his complaint to address the shortcomings that both parties have recognized.

### 1. Claim 1: Illegal Arrest (42 U.S.C. § 1983)

Mr. Smith's first cause of action is a Section 1983 claim for unlawful arrest against Officers Rodrigues, Garcia, Anthony Aiello, Ivan Santana, and Chris Johnson. Mr. Smith concedes, however, that the existing complaint does not state a claim against Officers Aiello, Santana, and Johnson.

Section 1983 makes liable any "person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any … person … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Nor can an individual be liable under a "'team effort' standard that allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Hopkins v. Bonvicino*, 573 F.3d 752, 769–70 (9th Cir. 2009) (quoting *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir.1996)) (cleaned up).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir.2001)). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Id.* (quoting *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004)). "It is well-settled that the determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search." *Id.* (cleaned up).

Mr. Smith alleges that the facts did not support the charges or warrant. Drawing all reasonable inferences in his favor, none of the allegations in Mr. Smith's complaint suggest that there was probable cause to arrest Mr. Smith. Still, while the factual allegations in the complaint might be sufficient to plausibly state Section 1983 claims for unlawful arrest against at least *some* of the officers, the complaint as drafted fails to clearly distinguish which allegations pertain to which defendants—especially since Mr. Smith has conceded that some of the officers currently named in this claim should be dismissed. As Defendants note, the complaint entirely fails to distinguish among the various "responding officers" and to demonstrate each defendant's liability based on that defendant's own individual conduct.

Accordingly, Claim 1 is dismissed, and Mr. Smith is granted leave to amend to clarify his allegations. As Mr. Smith recognizes, one way to clarify his claims and allegations might be to break out current Claims 1 and 2 into four separate Section 1983 claims: (1) unlawful arrest,

5

against Officers Garcia, Rodrigues, and Does; (2) excessive force, against Officers Garcia, Rodrigues, and Does; (3) October 1, 2021 warrantless search by Doe Officers; and (4) October 10, 2021 warrantless search by Officer Garcia and Does. Dkt. No. 47, at 8 n.11.

### 2. Claim 2: Unlawful Seizure, Excessive Force, Retaliation (42 U.S.C. § 1983)

Mr. Smith's second cause of action is a Section 1983 claim for unlawful seizure, excessive force, and retaliation in violation of the First, Fourth, and Fourteenth Amendments. As with the first claim, Mr. Smith concedes that this cause of action is not adequately pleaded against some of the defendants currently named, and the claim is therefore dismissed with respect to Officers Aiello, Santana, and Johnson.

To the extent this claim alleges unlawful seizure and wrongful arrest, it largely overlaps with Mr. Smith's first claim and is dismissed with leave to amend on the same basis.

The second aspect of this claim involves Mr. Smith's allegations of excessive force. Excessive force during an arrest or seizure, even if the arrest itself is lawful, violates the Fourth Amendment. "In assessing a claim of excessive force, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. A court (judge or jury) cannot apply this standard mechanically. Rather, the inquiry requires careful attention to the facts and circumstances of each particular case." *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (cleaned up). At the pleading stage, this standard does not set a particularly high bar: A plaintiff must simply allege some use of force that could potentially be determined by a jury to be unreasonable. Here, Mr. Smith alleges that he was unarmed and at home when several of the defendant officers removed him from his home at gunpoint, forced him to the ground, and handcuffed him. That suffices to state a claim for excessive force. As with the first claim, however, this claim also fails to adequately distinguish which defendants were responsible for which conduct. The excessive force claims are also therefore dismissed with leave to amend to clarify the allegations.

This cause of action is also styled as one for retaliation, and Mr. Smith asserts that the unlawful arrest and excessive force were carried out "in retaliation for speech that was lawful and

protected by the First Amendment." Dkt. No. 28, at 16. "To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (cleaned up). As Defendants argue, Mr. Smith's current retaliation claims are conclusory and Mr. Smith does not plead all of the required elements. Indeed, in his opposition, Mr. Smith appears to suggest that he is not actually pursuing a First Amendment claim. *See* Dkt. No. 47, at 8 n.11. Accordingly, the retaliation claims are dismissed. Should Mr. Smith wish to claim retaliation in an amended complaint he may do so, but he must plead all of the required elements. *See Capp*, 940 F.3d at 1053.

Finally, in the section of his opposition addressing Claim 2, Mr. Smith suggests that he has adequately pleaded a cause of action for "warrantless searches of his home." *See* Dkt. No. 47, at 13. In particular, he points to warrantless entries of his home on October 1 and October 10, 2021. While the alleged facts might support unlawful search claims under Section 1983 and the Fourth Amendment, Defendants are correct that these claims are not clearly pleaded in either of the first two causes of actions. Accordingly, to the extent the complaint currently includes Section 1983 claims for warrantless searches of Mr. Smith's home, these claims are also dismissed with leave to amend so that Mr. Smith may more clearly and separately plead this claim and specify which defendants he believes are liable on those claims.

### 3. Claim 3: Fabrication of Evidence (42 U.S.C. § 1983)

Mr. Smith's third cause of action is a Section 1983 claim for fabrication of evidence.

It is "virtually self-evident" that there is a "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

Defendants argue that, to the extent Mr. Smith claims his arrest (or the underlying warrant) were based on fabricated evidence, Mr. Smith has not actually identified any fabrications. They are correct. In his complaint, Mr. Smith asserts that he "did not verbally threaten anyone," that he "had not been involved with any crime," that MPD officers "did not observe him committing any crime," that he "was empty handed" and the officers "had no reason to believe he was carrying a weapon," and that he "had not harmed anyone." *Id.* at 11; *see also* Dkt. No. 47, at 14–15. Mr. Smith also asserts that he was arrested, and that even if the officers did have a warrant (the complaint appears to contradict itself on this question), the warrant was invalid. He says that he was "booked into custody for alleged 417(A)(1)PC deadly weapon, not firearm and 422(A)PC threaten crime; reckless driving and other allegations," but that "the officers did not witness any of the allegations nor did facts support the charges or warrant." Dkt. No. 28, at 9.

On this basis, Mr. Smith concludes that Detective Ball and Officers Beavers, Rodrigues, and Garcia, as well as other unidentified officers, drafted and submitted arrest reports with "material misrepresentations and omissions" in order to secure his arrest and prosecution. But this leaves several logical gaps. First, misrepresentations in the retrospective arrest reports cannot have served as the basis for Mr. Smith's arrest, false or not. And to the extent he believes he was arrested without probable cause and/or a valid warrant, those claims are already captured by his unlawful arrest claim. Second, as Mr. Smith acknowledges, he was never actually prosecuted or criminally charged. Finally, even if he was arrested and booked into custody on the basis of fabricated evidence—certainly a genuine deprivation of liberty that could have been caused by fabricated evidence—Mr. Smith has not clearly alleged what that fabricated evidence actually was. It is not enough that the officers themselves did not witness the allegations underlying his arrest, nor that the true facts (in his view) would not have supported the charges or a warrant. Mr. Smith needs to allege that individual officials deliberately fabricated specific evidence that served as the basis for his arrest and detention. The allegations in the current complaint suggest that he may be able to do so. As currently formulated, however, this claim is vague and ambiguous enough that it may be difficult for Defendants to prepare a response. *See* Fed. R. Civ. P. 12(e). Accordingly, this claim is dismissed with leave to amend so that Mr. Smith may more clearly specify the deliberate

8

fabrications that caused him to be detained and identify which officials submitted them.

### 4. Claim 4: Municipal and Supervisory Liability (42 U.S.C. § 1983)

Mr. Smith's fourth cause of action is a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for a municipal custom or practice of using excessive force and for failure to train or supervise. These claims are alleged against the City, MPD, MPD Chief Tina Nieto, Detective Ball, Officer Beavers, and unnamed defendants. Mr. Smith concedes that Detective Ball and Officer Beavers should not be included in this claim. These claims against them are therefore dismissed.

Under *Monell*, municipalities cannot be liable under Section 1983 on a respondeat superior theory but can be directly liable if an unwritten custom amounting to deliberate indifference to a plaintiff's constitutional rights results in a deprivation of those rights. 436 U.S. at 691. Failure to train and failure to supervise can constitute policies of deliberate indifference actionable under Section 1983, but mere negligence in training or supervision does not give rise to a *Monell* claim. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Mr. Smith's fourth claim includes two clusters of allegations against the City and MPD. First, Mr. Smith alleges that his injuries were the result of "an unconstitutional practice or custom" of "using excessive and unreasonable force on individuals who are unarmed." Mr. Smith asserts that there has been "widespread use of force" by MPD officers, and that "the uniformity in which deputies acted in reckless disregard of Mr. Smith's rights demonstrates the existence of a practice or custom." Mr. Smith also alleges that Defendants had a custom, policy, and practice of (among other things) retaining and promoting officers who used excessive force, maintaining inadequate reporting and discipline procedures, and having a "brotherhood" of a "code of silence" to protect officers.

Standing alone, however, these allegations are conclusory. Mr. Smith does not allege any formally adopted written policies. And while a "custom" may be "so widespread as to have the force of law," Mr. Smith has only included allegations of official conduct that occurred in the particular incidents at issue in this case. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Even if MPD officers did in fact use excessive force in these instances, Mr. Smith's

allegations, without more, do not plausibly establish that this use of force was the result of a custom that was so widespread as to have the force of law. Accordingly, the *Monell* custom or practice claims against the City and MPD are dismissed. Mr. Smith may amend these claims, but should only do so if he can plead additional facts, rather than conclusory assertions, showing that there was a persistent and widespread practice of using excessive force in cases like his.

Mr. Smith's second set of allegations focuses on MPD's personnel practices, including failures in hiring, training, and discipline. Mr. Smith makes related claims in both his fourth and fifth causes of action, although he says in his opposition that these parallel pleadings are redundant. Dkt. No. 47, at 9. As discussed above, Mr. Smith alleges that MPD officers used excessive force when they arrested him at his home at gunpoint. He also alleges that the uniformity in which the officers acted demonstrates their lack of adequate training. But the Ninth Circuit has held that "an inadequate training policy … cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022). To state a claim that challenges training, Mr. Smith must plead allegations beyond the facts of the particular challenged incident "suggesting that the training … was defective." *Id.* Accordingly, Mr. Smith's failure to train claims are also dismissed with leave to amend.

Mr. Smith's claim states that under *Monell*, "municipal entities may be held liable for … the ratification of the illegal and unconstitutional conduct by an individual with the final policy-making authority." Dkt. No. 28, at 18. Defendants argue that it is unclear whether Mr. Smith intends to make a *Monell* ratification claim, Dkt. No. 45, at 28, and Mr. Smith does not discuss a ratification claim in his opposition to the motion to dismiss. In addition to reciting the legal standard, the complaint also states that "management, and final policymakers (including Chief Nieto) ratified the conduct, approved it, and did not impose discipline because of it." Dkt. No. 28, at 19. Without more, however, this allegation is conclusory. The complaint as formulated therefore does not state a ratification claim. To the extent the complaint seeks to plead a *Monell* ratification claim, that claim is also dismissed with leave to amend.

Finally, the complaint specifically names MPD Chief Nieto as a defendant to this cause of action. Because the City and MPD are also named as defendants, naming Chief Nieto in her

10

official capacity as a defendant to his municipal liability claims is redundant. Chief Nieto may also be liable in her individual capacity, however, and Mr. Smith's claim is styled as one for supervisory as well as municipal liability. "Under Section 1983, supervisors cannot be held liable for the acts of their reports under a respondeat superior theory." *Hyde*, 23 F.4th at 874. "But supervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Id.* The complaint, however, does not plead facts sufficient to establish that Chief Nieto is liable on any of these bases. It does not allege that she participated in or directed the constitutional violations Mr. Smith alleges. And although it concludes that she "should have known, prior to this incident, that such subordinates were unfit or incompetent," it does not plead any additional facts suggesting *why* this would have been the case. *See* Dkt. No. 28, at 22. The facts of the incident at issue in this case alone cannot establish that Chief Nieto should have known *prior* to the incident that there was a potential issue, let alone establish that she acted with the degree of culpability and reckless or callous indifference to constitutional rights that is required to hold supervisors liable under Section 1983. Accordingly, the supervisory liability claims against Chief Nieto in her personal capacity are also dismissed with leave to amend.

**5.     Claim 5: Municipal/Supervisory Liability for Failure to Train and/or Supervise**

Mr. Smith concedes that this claim is redundant. It is therefore dismissed.

**6.     Claim 6: Assault and Battery**

Mr. Smith's sixth cause of action is for assault and battery against Officers Rodrigues, Garcia, Aiello, Santana, and Johnson. He concedes that he does not state claim against Officers Aiello, Santana, and Johnson. Mr. Smith also contends that the City is vicariously liable under California Government Code § 815.2. In their motion to dismiss, the defendants only challenge this claim as it pertains to the three officers Mr. Smith has conceded should be removed from this claim. Accordingly, this claim is dismissed as to those officers and Mr. Smith is granted leave to amend the assault and battery claims to clarify the allegations as to the remaining defendants,

including the municipal entities.

### 7. Claim 7: False Imprisonment/Arrest

Mr. Smith does not oppose dismissing this claim. It is therefore dismissed with leave to amend.

### 8. Claim 8: Negligence

Mr. Smith's eighth cause of action alleges negligence against "all Defendants." Mr. Smith concedes that this claim is not adequately pleaded against some of the defendants. The negligence claims against Officers Aiello, Santana, and Johnson; Sergeant Richard Cox; and Commander Donna White are therefore dismissed. The remaining collective allegations against "all" defendants—a mix of individuals and municipal entities—are insufficient under Rule 8, especially given that some of the named defendants will be dismissed. Throughout this section of Mr. Smith's complaint, it is frequently unclear whether references to "Defendants" refer to all defendants or only to all or some of the officers and/or municipal entities. Accordingly, this claim is dismissed with leave to amend so that Mr. Smith may remove the extraneous defendants and provide a more definite statement of his allegations as to those that remain, including identifying the duty owed and breaching conduct for each individual defendant.

### 9. Claim 9: Bane Act (Cal. Civil Code §§ 51, 51.7, 52.1)

Mr. Smith's ninth cause of action is for violation of the Bane Act, which provides:

> (b) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General … may bring a civil action … .
>
> (c) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute in their own name and on their own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (b).

Cal. Civ. Code § 52.1.

There are two elements to a Bane Act claim. First, there must be a "threat, intimidation, or coercion," although that element need not be "transactionally independent" from the underlying constitutional violation alleged. *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Second, "the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Id.* (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 799–800 (Cal. Ct. App. 2017)). As before, the complaint's collective assertions against "all Defendants" are impermissibly vague under Rule 8, and Mr. Smith has recognized that some of the individual defendants should not be included. On that basis alone, the Bane Act claims are dismissed with leave to amend.

At least as to some of the individual officers, however, the complaint alleges facts sufficient to establish the first element given the other alleged constitutional violations discussed above. As to specific intent, this section of the complaint does not explicitly allege that individual officers acted with the requisite intent. But the Ninth Circuit has recently explained in this context that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). In his false arrest claim, Mr. Smith alleges that Officers Rodrigues, Garcia, and other responding officers acted with reckless disregard for his rights and safety. Ultimately, "the jury must find that the defendants intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Id.* At the motion to dismiss stage, however, allegations of conduct that violates constitutional rights coupled with allegations that the conduct was done with reckless disregard for a party's rights can be sufficient to establish specific intent.

The heading of Claim 9 in Mr. Smith's complaint also refers to Sections 51 and 51.7 of the California Civil Code in addition to the Bane Act, which is codified at Section 52.1. It is unclear whether Mr. Smith actually seeks to invoke Sections 51 and 51.7, and neither the body of the ninth cause of action section in his complaint nor the relevant portion of his opposition brief refers to these sections. Any claims under Sections 51 or 51.7 are therefore dismissed with leave to amend

should he wish to add and plead these separate statutory claims.

### 10. Claim 10: Intentional Infliction of Emotional Distress

Mr. Smith's tenth cause of action is for intentional infliction of emotional distress against Officers Rodrigues, Garcia, Aiello, Santana, and Johnson (although he again concedes that no claims are stated against Officers Aiello, Santana, or Johnson).

"To establish a claim for intentional infliction of emotional distress, a plaintiff must prove '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir. 2013) (quoting *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982)). Allegations of excessive force can support a claim for intentional infliction of emotional distress. *See Black v. City of San Diego*, No. 21-cv-1990, 2023 WL 2336894, at \*9 (S.D. Cal. Mar. 2, 2023); *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 & n.17 (9th Cir. 2007).

Here, Mr. Smith's allegations that he was unarmed and at home when several of officers removed him from his home at gunpoint, forced him to the ground, and handcuffed him are sufficient to plead extreme and outrageous conduct for the same reason they are sufficient to plead excessive force. Mr. Smith will still need to prove harm and causation. At the pleading stage, though, his allegations of outrageous conduct are sufficient to state a claim for intentional infliction of emotional distress. But because this claim is currently stated against officers all parties recognize should be dismissed, this claim is also dismissed with leave to amend so that Mr. Smith may remove the extraneous defendants and clarify his allegations as to those that remain.

### 11. Claim 11: Conspiracy to Violate Rights

Mr. Smith does not oppose dismissing this claim. It is therefore dismissed with leave to amend.

### 12. Claim 12: Americans with Disabilities Act

Mr. Smith concedes that he has not pleaded facts sufficient to state this claim. It is therefore dismissed with leave to amend.

## IV. Conclusion

For the reasons discussed above, Mr. Smith's claims are dismissed with leave to amend. An amended pleading, should Mr. Smith choose to file one, shall be due by **February 2, 2024**.

**IT IS SO ORDERED.**

Dated: January 3, 2024

P. Casey Pitts
United States District Judge